UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CASEY CUTRIGHT, *Pro Se*, | Case No.: 1:22 CV 1505 |
| Petitioner | JUDGE SOLOMON OLIVER, JR. |
| v. | |
| MISTY MACKEY, Warden, | |
| Respondent | ORDER |

Currently pending before the court in the above-captioned case is *Pro Se* Petitioner Casey Cutright's ("Petitioner" or "Cutright") Petition for Writ of Habeas Corpus ("Petition") (ECF No. 1), pursuant to 28 U.S.C. § 2254. Under Local Rule 72.2, the court referred the matter to Magistrate Judge Jennifer D. Armstrong ("Judge Armstrong") to prepare a Report and Recommendation ("R & R"). For the following reasons, the court adopts Judge Armstrong's R & R (ECF No. 17) and denies Cutright's Petition in its entirety. The court also declines to issue Cutright a Certificate of Appealability.

**I. BACKGROUND**

**A.    Factual Background**

The following is a brief summary of the facts established at the Petitioner's trial. In the early morning hours of February 15, 2019, Ross County Sheriff Deputy Zachary McGoye ("McGoye") was

called to Petitioner's residents on a disorderly conduct report. (R & R at PageID 1181, ECF No. 17.) When McGoye arrived, Petitioner, who was sitting in his truck 100 yards away from the residence, told him that he and his wife, Amber Cutright ("Amber"), had a verbal altercation. (*Id.*) McGoye spoke to Amber, who shared with him that there had been an argument and that she, along with her three-month-old infant, J.C., wanted to go to the Adena Regional Medical Center. (*Id.*) McGoye took Amber and J.C. to the hospital and Petitioner stayed behind. (*Id.* at PageID 1182.)

During his investigation, lead detective Tony Wheaton ("Wheaton"), spoke with officials at Adena Regional Medical Center, and learned that J.C. had been transported to Nationwide Children's Hospital ("Nationwide") in Columbus. (*Id.*) Wheaton spoke to the staff and doctors at Nationwide and learned that J.C. suffered approximately 20 or more bone fractures in various states of healing. (*Id.*) Wheaton then photographed J.C. and documented the infant's external injuries. (*Id.*) When Wheaton returned to Ross County, he interviewed Petitioner about J.C.'s injuries twice. (*Id.*) Because Wheaton considered Petitioner a suspect, he advised Petitioner of his *Miranda* rights before the first interview. (*Id.*) Petitioner waived his rights and spoke to Wheaton. (*Id.*)

During the first interview, Petitioner told Wheaton about his relationship with Amber and J.C. (*Id.*) Petitioner initially told Wheaton that neither he nor Amber ever hurt J.C., and that neither of them were violent people. (*Id.*) However, upon learning about J.C.'s injuries from Wheaton, Petitioner stated that he had seen Amber potentially injure J.C. on eight different occasions because of her violent tendencies, but Petitioner maintained that he had never personally hurt J.C. (*Id.*) Later that day, Wheaton interviewed Petitioner again, this time recording the conversation. (*Id.*) It was during this second interview that Petitioner admitted to harming J.C. on three occasions. (*Id.*)

On March 15, 2019, Petitioner was indicted in the Ross County Court of Common Pleas on three counts of felonious assault (Counts One, Two, and Three), in violation of Ohio Revised Code § 2903.11, and two counts of endangering children, in violation of Ohio Revised Code § 2919.22 (Counts Four and Five). (*Id.* at PageID 1190 (citing Pet. Ex. 1).) Before the trial, the State moved to dismiss the second count of endangering children (Count 5). (*Id.*)

At trial, the jury heard from Detective Wheaton, medical experts, Petitioner, and two of Petitioner's friends. Wheaton testified as to what Petitioner told him about the three incidents during which he harmed J.C. (*Id.* at PageID 1182–83.) According to Wheaton's testimony, each time Petitioner harmed J.C., the interaction was precipitated by Amber yelling at him while he was holding J.C., thus causing him to become extremely angry, such that he squeezed and twisted J.C.'s arms and legs, and grabbed underneath J.C.'s armpits while violently bringing J.C. up to his chest. (*Id.* at 1183.) Wheaton testified that Petitioner described his handling of J.C.'s arms and legs like "revving up a motorcycle." (*Id.*) Petitioner admitted to Wheaton during the interview that he had lied earlier because he did not want to look like a bad guy. (*Id.*) After Wheaton's testimony, the court played the audiotape of the second interview. The recording included Petitioner describing the three incidents that Wheaton had previously testified about. (*Id.* at PageID 1184.) It was these three incidents that resulted in the criminal charges against Petitioner.

The medical experts, Doctors Michelle Greene and Brent Adler of Nationwide Chirdren's Hospital, testified about the injuries to J.C. and whether Petitioner's handling of J.C. could have resulted in such injuries. (*Id.* at PageID 1188.) Dr. Greene, an expert in child abuse pediatrics, testified that "if someone were to take J.C.'s limbs and squeeze it and bend it down, like a motion similar to revving a motorcycle, it would be sufficient to break J.C.'s bones." (*Id.*) Dr. Greene's final

report concluded that J.C.'s injuries were consistent with a diagnosis of physical abuse. (*Id.*) Dr. Adler, one of J.C.'s treating physicians, testified about J.C.'s fractures, and determined that, "[t]he fractures would have occurred with force, not by a three-month-old infant's normal movements, and could be cause [sic] by a motion like the movement involved in the revving of a motorcycle." (*Id.* at PageID 1189.)

In Petitioner's defense, two of his friends testified, explaining that he was nonviolent and that they had never observed any interactions between Petitioner and J.C. (*Id.*) Petitioner also testified in his own defense, stating that the admissions he made to Wheaton, which were on the audiotape played for the jury, were "not accurate," (*id*), and that he "only admitted to harming J.C. so that he could go home." (*Id.*) Petitioner denied ever harming J.C., and testified that he saw Amber harm J.C. instead. (*Id.*) On cross-examination, Petitioner admitted to showing Wheaton a motion with his hands, but testified that he never told Wheaton that he was "bending" J.C. (*Id.* at PageID 1190.) Ultimately, Petitioner testified that the first two incidents he told Wheaton about were made up, and that the third incident did happen, but he "did not snatch [J.C.] up so bad that it hurt him[.]." (*Id.*)

On February 20, 2020, the jury found Petitioner guilty on Counts One, Two, Three, and Four. (*Id.* (citing Pet. Ex. 2).) Sentencing occurred on May 1, 2020, and upon request of the State, Count Four was merged into the first three counts. (*Id.* (citing Petition Ex. 3).) The state court ultimately sentenced Petitioner to consecutive seven-year terms on all three Counts, for a total of 21 years in prison. (*Id.* at PageID 1192.)

**B.     Procedural Background**

On May 18, 2020, Petitioner filed a notice of appeal to the state appellate court challenging his conviction. (R & R at PageID 1192.) The Fourth District Court of Appeals determined it lacked

jurisdiction because the trial court judgment entry failed to dispose of Count 5, and thus the judgment entry appealed was not a final appealable order. (*Id.* at PageID 1193.) After the trial court issued a judgment entry dismissing Count 5, Petitioner, through, counsel timely filed a notice of appeal on June 21, 2021. (*Id.* at PageID 1194.) On November 9, 2021, the Court of Appeals affirmed Petitioner's conviction. (*Id.*)

Petitioner, acting pro se, filed an untimely motion for reconsideration of the Court of Appeal's decision on November 22, 2021, which the Court of Appeals denied on January 21, 2022. (*Id.*) Petitioner again acting pro se filed a timely notice of appeal to the Ohio Supreme Court on December 13, 2021. (*Id.*) The Ohio Supreme Court declined to accept jurisdiction on February 15, 2022. (*Id.* at PageID 1195.)

Petitioner then sought to reopen his appeal in the Fourth District Court of Appeals on January 21, 2022, which the Court of Appeals denied on March 9, 2022. (*Id.*) Petitioner then filed a timely notice of appeal of that decision with the Ohio Supreme Court on April 20, 2022. (*Id.*) The Ohio Supreme Court declined to accept jurisdiction on June 21, 2022. (*Id.* at PageID 1196.)

Cutright, acting pro se, filed the instant Petition on August 24, 2022, asserting the following six grounds for relief:[1]

> **GROUND ONE:** Prosecutor misconduct in the form of eliciting false/perjured Testimony using it as the conduct misstating evidence.
>
> **Supporting Facts:** The prosecutor throughout the trial misstated the evidence with evidence not of the record, using the detective's false testimony of bending and twisting with no video and no support from the audio trial exhibit No. 11. The prosecutor knowingly elicited the false testimony of the detective knowing the true evidence did not support it to corroborate the injuries only to win a conviction.

---

[1] Petitioner's grounds for relief are set forth verbatim.

**GROUND TWO:** Ineffective Assistance of Trial Counsel failure to repeatedly object to the prosecutor's misstatements of the evidence.

**Supporting Facts:** Trial counsel throughout trial refused repeatedly to object to misstatement of the evidence by the prosecution to defend and protect his client from a wrongful conviction obtained by the use of evidence that is not of the record, misstating the actual audio trial exhibit No. 11.

**GROUND THREE:** Improper Miranda Warnings in the form of questions – First Interrogation Tactic.

**Supporting Facts:** The detective testified under oath the second interview at the Ross County Sheriff's Office started at 6:17 P.M. and concluded at 9:27 P.M. a custodial setting Miranda was not issued until the last 28 minutes for the audio trial exhibit No. 11. the audio mentions unrecorded questioning that lead to the audio Question – First Tactic.

**GROUND FOUR:** Corpus Delicti Rule the audio is fully uncorroborated to the evidence outside the audio

**Supporting Facts:** Trial Exhibit No. 11 is uncorroborated to the other evidence the audio is at parts inaudible as the detective interrupts Cutright or they over talk each other however, the audio says for count one and count two the victim was merely squeezed with Cutright's hands count three, the victim was picked up by clothing none of this would cause bone injuries the prosecution knew this so the prosecution used the detective's bend and twist testimony to corroborate the evidence leaving the audio uncorroborated.

**GROUND FIVE:** Insufficient evidence conduct caused by "Serious Physical Harm."

**Supporting Facts:** Count One in the audio says the victims elbows were squeezed, Count Two says the victim knees were squeezed. The squeezing was Only with hands no other applied force and could never cause bone Injuries.

Count Three in the audio says to codefendant was going off triggering A PTSD flashback and to protect the victim I picked the victim up by His onesie to protect him not to harm him and that his onesie made his Armpits "a little red" similar to rug burn and the clothing would give Before bone injuries would occur there is not enough force in count Three to cause bone injuries. Only with the misstatements of

-6-

|  |  |
|---|---|
|  | the Evidence of conduct proved serious physical harm the audio the Real evidence would never cause bone injuries there is no evidence Conduct in the audio caused serious physical harm. |
| **GROUND SIX:** | Insufficient evidence as to "Knowingly." |
| **Supporting Facts:** | During trial for all three Felonious Assault charges Detective Wheaton Testified they occurred during a PTSD flashbacks. As well upon Criminal Rule 29 acquittal in trial for insufficient evidence as to serious Physical harm, insufficient evidence as to knowingly the prosecutor Could not provide the knowingly element. The only way the State provided Knowingly for the jury was with the use of bending and twisting as the conduct However, that is not the conduct in the audio with mental health history and PTSD the State could not prove knowingly so the State misstated the evidence To do so before the jury. |

(Pet. at PageID 5–13.)

Warden Douglas Fender ("Respondent") filed a Return of Writ (ECF No. 10) on September 19, 2023. In it, Respondent argues that all of Cutright's claims are procedurally defaulted and lack merit. (Return of Writ at PageID 276–305.) On June 12, 2023, Cutright filed his Traverse (ECF No. 12), and Respondent filed a Sur-Reply (ECF No. 13) on June 27, 2023. On July 14, 2023, Cutright filed a Motion for Hearing Regarding Circumstances Surrounding Trial Exhibit 11 ("Motion") (ECF No. 14.) Respondent filed an Opposition (ECF No. 15) on July 14, 2023, to which Cutright filed a Response (ECF No. 16) on July 20, 2023. The Magistrate Judge denied Petitioner's Motion on August 2, 2023, concluding that Cutright had not satisfied either of the two limited circumstances upon which a federal court may admit new evidence when considering a habeas petition pursuant to 28 U.S.C. §2254. (Non-Doc Order, Aug. 2, 2023.)

Judge Armstrong submitted her R & R on July 27, 2024, (ECF No. 17), recommending that

the court deny Cutright's Petition in its entirety and not grant him a Certificate of Appealability.[2] Judge Armstrong determined that all of Cutright's claims lacked merit because they were either not cognizable on federal habeas review (Ground Four), or because Cutright could not demonstrate that the state court judgment was contrary to, or an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court (Grounds One, Two, Three, Five, Six). (R & R at PageID 1207–20.) As to Grounds One, Two, Three, Five, and Six, the Magistrate Judge applied AEDPA deference to the Fourth District Court of Appeals because Cutright's arguments were the same as those considered by the Court of Appeals, and the Court of Appeals holdings were not an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. (*Id.*) Petitioner filed his Objection (ECF No. 19) to the Magistrate Judge's R & R on August 19, 2024. This case is now ripe for review.

## II. LAW AND ANALYSIS

As the Magistrate Judge pointed out, Cutright's Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (*See* R & R at PageID 1198–1202.) Under the AEDPA statute, a petition for a writ of habeas corpus cannot be granted to a person in custody as a result of a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court

---

[2] Judge Armstrong also noted in her R & R that Douglas Fender is no longer the Warden of Lake Erie Correctional Institution where Mr. Cutright is incarcerated, but Misty Mackey is, and therefore should be substituted as the proper respondent in this case. (R & R at PageID 1181, n. 1.) The court agrees and substitutes Misty Mackey for Douglas Fender.

proceedings." 28 U.S.C. §§ 2254(d)(1) and (2). Under § 2254(d)(1)'s "unreasonable application" language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle[...] but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). In order for this to be the case, the state court's application of the law must be "objectively unreasonable," not just incorrect or erroneous. *Id.* This standard is intentionally "difficult" for prisoners to meet. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If [AEDPA] standard [for granting habeas relief] is difficult to meet, that is because it was meant to be.")

Cutright objects to all of Judge Armstrong's conclusions on his six claims. When a court receives timely objections to a magistrate judge's R & R, it must "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." *Aldrich v. Bock*, 327 F.Supp.2d 743, 747 (E.D. Mich. 2004) (quoting 28 U.S.C. § 636(b)(1)). However, an objection that summarizes what has already been presented, or merely states a disagreement with a magistrate's conclusion, is not an objection. *Id.* Here, Petitioner's objections to Judge Armstrong's conclusions on all six Grounds merely state a disagreement and reiterate what Petitioner already presented in his Petition and Traverse.

With regard to Petitioner's first objection, Cutright argues that, "[t]he Magistrate Judge just as the Fourth District Court of Appeals has [f]ailed to see this case relies on the word of a detective and without the [f]alse testimony there would never been a conviction[.]" (Obj. at PageID 1229.) This assertion, however, relies on the same supporting facts and arguments Judge Armstrong thoroughly considered and rejected. (*See* Pet. at PageID 5 "The prosecutor knowingly elicited the false testimony of the detective knowing the true evidence did not support it to corroborate the

injuries only to win a conviction.") But even if this purported objection was not duplicative, the court agrees with the Magistrate's conclusion that the state Court of Appeals twice reasonably determined that there was no prosecutorial misconduct because the prosecutor's use of the term "bending" for the phrase "while also pulling down" was well within the prosecutor's discretion and is not a mischaracterization or misrepresentation of Detective Wheaton's testimony. (R & R at PageID 1207.) Thus, Petitioner's first purported objection is overruled.

Similarly, Cutright argues in his second objection that the Magistrate failed in her conclusion that trial counsel was not deficient given that "there is no sound trial strategy not to object as even the judge [q]uestioned about the video a simple objection would have more than [l]ikely resulted in a different trial and verdict." (Obj. at PageID 1230–31.) This same contention was before Judge Armstrong (*see* Pet. at PageID 6; Traverse at PageID 1148), and she properly rejected it. (R & R at PageID 1210.) Therefore, Petitioner's second supposed objection is overruled.

On Ground Three, which pertains to improper *Miranda* warnings, Cutright asserts that the state Court of Appeals "unreasonably the [sic] applied law and the Magistrate Judge failed to see it[.]" (Obj. at PageID 1231 (citing *United States v. Barnes*, 717 F.3d 1200, 1204 (9th Cir. 2013); *United States v. Maddox*, 2020 U.S. Dist. LEXIS 34125 (citing *Seibert*, 542 U.S. 600)).) As he did in his Petition and Traverse, Cutright argues that the Detective did not properly give him his *Miranda* rights before the second custodial interrogation began and Cutright confessed to certain conduct. (Obj. at PageID 1231.) But, just as the state Court of Appeals and the Magistrate Judge discussed, Petitioner received *Miranda* warnings twice–once before questioning at Ross County Children Services, which occurred before his confession, and again at the Ross County Sheriff's

Office. (*See* R & R at PageID 1211–12.) As such, Petitioner's third objection is similarly no objection at all, and is overruled.

Cutright's objection to the Magistrate Judge's conclusion on Ground Four is that other courts have reviewed corpus delicti claims, and so it is cognizable. (Obj. at PageID 1232.) In support of his disagreement with Judge Armstrong, Cutright cites *Wong Sun v. United States*, 371 U.S. 471 (1963) and *Opper v. United States*, 348 U.S. 84 (1954). However, these cases do not aid Cutright's objection because both discuss corpus delicti in the context of direct appeals from federal convictions, not post-conviction proceedings such as the instant habeas petition. Moreover, the Magistrate Judge correctly explained that Petitioner's corpus delicti claim "is simply not open to habeas review because the corpus delicti rule is not constitutionally mandated." (R & R at PageID 1213 (quoting *Abby v. Prelesnik*, No. 2:08-CV-15333, 2011 WL 7625806 (E.D. Mich. Apr. 21, 2011), *report and recommendation adopted*, No. 08-15333, 2012 WL 1019169 (E.D. Mich. Mar. 26, 2012), *aff'd sub nom*. *Abby v. Howe*, 742 F.3d 221 (6th Cir. 2014)).) Accordingly, this objection is overruled.

Finally, Petitioner objects to the Magistrate Judge's conclusion on Grounds Five and Six by once again challenging Judge Armstrong's deference to the state Court of Appeals' decision that there was sufficient evidence that Cutright caused J.C. "serious physical harm" and that he acted "knowingly." (Obj. at PageID 1235 "The Magistrate Judge has failed to see past the Fourth District Court of Appeals to make a reasonable Report and Recommendation.") Cutright argues that Judge Armstrong should have determined that the state could not prove the "knowingly" element as part of a felonious assault charge because the incidents with J.C. occurred while he was experiencing a post-traumatic-stress-disorder ("PTSD") flashback, and "anything can [h]appen during a PTSD flashback[.]" (*Id.* at PageID 1233.) Petitioner also contends that Detective Wheaton and the

-11-

prosecution had to improperly add "bending," "twisting," and "like revving a motorcycle" to Petitioner's statements of "squeezing" J.C. to prove that Cutright's conduct caused serious physical harm. (*Id.* at PageID 1233–34.) Both of these arguments parrot those Petitioner raised in his Petition and Traverse. (*See* Pet. at PageID 12–13; Traverse at PageID 1152–54.) Resultantly, they are not proper objections to the Magistrate's conclusions. But even if they were, the court agrees with the Magistrate's conclusions on Grounds Five and Six, and thus overrules Petitioner's purported objections.

### III. CONCLUSION

After careful *de novo* review of the R & R, Petitioner's Objections, and all other relevant documents in the record, the court finds that Judge Armstrong's recommendation is fully supported by the record and controlling case law. Accordingly, the court adopts the R & R and hereby denies and dismisses the Petition (ECF No. 1). The court also certifies that there is no basis on which to issue a Certificate of Appealability. Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c).

IT IS SO ORDERED.

>*/s/ SOLOMON OLIVER, JR.*
>UNITED STATES DISTRICT JUDGE

October 14, 2025